**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 16 2012, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT J. HARDY**
Hardy Law Office
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT W. EHERENMAN**
**MELANIE L. FARR**
Haller & Colvin, P.C.
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF J.D. and D.D., | ) | |
| | ) | |
| B.D., Father, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 76A04-1111-JP-580 |
| | ) | |
| C.H., Mother, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE STEUBEN SUPERIOR COURT
The Honorable William C. Fee, Judge
The Honorable Randy Coffey, Magistrate
Cause No. 76D01-1006-JP-196

**July 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

B.D. ("Father") appeals an order of the trial court related to custody, support, and parenting time. Father raises one issue, which we revise and restate as whether the trial court abused its discretion in excluding certain evidence. We reverse and remand.

The relevant facts follow. In June 2010, Father filed a petition to establish paternity. In July 2010, the court established paternity of two children of C.H. ("Mother") under two cause numbers which were later consolidated, and ordered a custody evaluation.[1] The court also ordered the parties to mediation. In August 2010, the appointed mediator filed a letter with the court advising that the parties were unable to resolve their parenting dispute through mediation. David N. Lombard, a clinical psychologist, conducted a custody evaluation and prepared a Child Custody and Parenting Time Evaluation Report (the "Custody Evaluation Report") dated December 3, 2010. In the Custody Evaluation Report, Dr. Lombard indicated that he had received a document regarding the parties' mediation which indicated that the mediation was unsuccessful. The Custody Evaluation Report reported Mother's history of aggression and violence toward Father, the results of her psychological testing which indicated a high risk for impulsive decision making, paranoia, and emotional volatility, and Mother's actions limiting Father's access to the children. Based upon his assessments of Mother, Father, and the children, Dr. Lombard recommended that it was his clinical opinion that it

---

[1] Local Rule 76-DR-4-D of the Steuben Circuit and Superior Courts provides:

Unless waived by the Court no case involving the issue of contested child custody will be set for final hearing until there is filed with the Court a custodial evaluation prepared by an expert approved by the Court. Upon request, the Court will allocate costs subject to review at final hearing. The written report of the expert shall be deemed admitted into evidence subject to cross-examination. However, no custody evaluation may be conducted, ordered by the Court or requested by any party unless and until cooperative approaches, such as mediation, have been exhausted.

was in the best interests of the children for Father to be their primary custodial parent, that Mother have parenting time on the condition that she is compliant with certain treatment, and that until she is compliant her parenting time be supervised. On December 6, 2010, Mother filed a motion to strike the Custody Evaluation Report.

On December 8, 2010, the court held a hearing on Mother's motion to strike. At the hearing, Mother argued that the Custody Evaluation Report was inadmissible because it was in violation of Alternative Dispute Resolution Rule 2.11 regarding confidentiality. Father argued that the Custody Evaluation Report was not inadmissible, that Dr. Lombard as an expert is able to rely on inadmissible evidence, and that, while the ADR Rules may present a problem, Dr. Lombard would testify that he is able to redact the challenged portion of the Custody Evaluation Report. The court heard testimony from Father, Mother, and Dr. Lombard. Father testified that he received a letter dated August 6, 2010, from the mediator which included a confidential summary of the mediation and indicated that the parties were unable to resolve their disputes. Father also testified that he had given the document to Dr. Lombard at his initial meeting with him. Mother testified that she had informed Dr. Lombard that, at the mediation, Father had agreed to drop a protective order if she would give him joint custody. The parties stipulated to the admissibility of the Custody Evaluation Report and the August 6, 2010 letter from the mediator for purposes of the hearing.

Dr. Lombard testified that he was able and willing to revise his evaluation to exclude or redact any information provided by the parties referencing mediation and that in his professional opinion he is able to exclude any information pertaining to the

3

mediation and render a clinical assessment of the parties in an unbiased manner. He testified regarding several examples of occasions in previous cases where he had been asked to include or exclude certain information in rendering an opinion or how his opinion would change if certain factors were altered. Dr. Lombard further indicated that he did not at all rely upon the mediation information or documents provided by the parties in rendering his findings and conclusions. He testified that his clinical opinion was that the information pertaining to the mediation was fairly equally favorable or unfavorable to both parents and that there was not anything clinically useful in the information. Dr. Lombard also indicated that he had been able to form an opinion as to his recommendations to the court regarding custody and parenting time without considering any information pertaining to the mediation and that his recommendations did not differ from the recommendations in his December 3, 2010 Custody Evaluation Report.

Following the hearing, the court entered an order which stated that information gained from mediation is confidential and inadmissible, found that Dr. Lombard used confidential information from the mediator in creating his evaluation, granted Mother's motion to strike, and ordered that the parties were prevented from using the Custody Evaluation Report in any evidentiary capacity. Specifically, the court found: "The evidence reveals that Dr. Lombard used confidential information from the mediator in creating his evaluation. With that, the apple was bit, and innocence was lost. Further, once made, the report is spoiled; it cannot be considered as evidence." Appellant's Appendix at 52.

4

In December 2010, Father filed a motion for a second custodial evaluation, which the court ordered. Father filed a motion for clarification on March 3, 2011, and Mother filed a motion to vacate order for second custodial evaluation on March 4, 2011. Following a hearing on March 23, 2011, the court issued an order finding that Father was entitled to a second custodial evaluation, that it would not vacate its order in that regard, and that no part of the Custody Evaluation Report could be used or relied upon in any way in the new evaluation. On June 22, 2011, Father filed a motion for the admission of the Custody Evaluation Report, which the court denied.

On July 6 and 7, 2011, the court held a final hearing. At the beginning of the hearing, Father made an offer of proof, which the court accepted, of the Custody Evaluation Report to preserve the issue of its exclusion from the evidence for appeal. On October 6, 2011, the trial court issued Final Orders of Custody, Support, and Parenting Time which granted Mother custody of the children, ordered that Father have parenting time pursuant to the Indiana Parenting Time Guidelines, and entered other orders with respect to parenting time, child support, and other costs and fees.[2]

The issue is whether the trial court abused its discretion in excluding the Custody Evaluation Report and Dr. Lombard's testimony. Father argues that the Custody Evaluation Report and Dr. Lombard's testimony is admissible under Ind. Evidence Rules 703[3] and 408 and Ind. Alternative Dispute Resolution Rules 2.1 and 2.11. Father argues

---

[2] In finding 13, the court stated: "[Father] created the problems, which lead to the inadmissibility of the custody evaluation. He should be solely responsible for its cost." Appellant's Appendix at 10.

[3] Ind. Evidence Rule 703 provides:

5

that the court's exclusion of the Custody Evaluation Report was overbroad, that Dr. Lombard could have redacted the information pertaining to the mediation, and that Dr. Lombard testified that he had experience in redacting information from his reports. Father further maintains that, because the report was extremely detrimental to Mother's position, it is very likely that her objection is to the damage it does to her desire to maintain custody rather than the relatively innocuous mediation-related information contained in the report.

Mother asserts that the court did not abuse its discretion in excluding the Custody Evaluation Report and Dr. Lombard's testimony. Mother argues that Ind. Alternative Dispute Resolution Rule 2.11 provides that parties cannot waive the confidentiality requirement, that Father has made no showing that the mediation statements are the type of inadmissible evidence reasonably relied upon by experts in the field under Ind. Evidence Rule 703, and that Father fails to acknowledge that the court had ordered that he was entitled to a second custodial evaluation but that he chose not to obtain a second evaluation. Mother further asserts that even if the court abused its discretion, the ruling constituted harmless error as the court had before it evidence from a two-day evidentiary hearing on custody.

The admission and exclusion of evidence is a matter within the sound discretion of the trial court, and we will review only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is

---

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field.

clearly against the logic and effect of the facts and circumstances." Smith v. State, 754

N.E.2d 502, 504 (Ind. 2001). "Errors in the admission or exclusion of evidence are to be

disregarded as harmless error unless they affect the substantial rights of a party." Fleener

v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted).

Ind. Alternative Dispute Resolution Rule 2.1 states the purpose of the mediation

rules and provides:

> Mediation under this section involves the confidential process by which a
> neutral, acting as a mediator, selected by the parties or appointed by the
> court, assists the litigants in reaching a mutually acceptable agreement. The
> role of the mediator is to assist in identifying the issues, reducing
> misunderstanding, clarifying priorities, exploring areas of compromise, and
> finding points of agreement as well as legitimate points of disagreement.
> Any agreement reached by the parties is to be based on the autonomous
> decisions of the parties and not the decisions of the mediator. It is
> anticipated that an agreement may not resolve all of the disputed issues, but
> the process can reduce points of contention. Parties and their
> representatives are required to mediate in good faith, but are not compelled
> to reach an agreement.

Ind. Alternative Dispute Resolution Rule 2.11, which governs the confidentiality

of mediation sessions and incorporates Evidence Rule 408, provides:

> Mediation shall be regarded as settlement negotiations as governed by Ind.
> Evidence Rule 408. For purposes of reference, Evid. R. 408 provides as
> follows:

>> Rule 408. Compromise and Offers to Compromise

>> *Evidence of (1) furnishing or offering or promising to*
>> *furnish, or (2) accepting or offering or promising to accept a*
>> *valuable consideration in compromising or attempting to*
>> *compromise a claim, which was disputed as to either validity*
>> *or amount, is not admissible to prove liability for or invalidity*
>> *of the claim or its amount. Evidence of conduct or statements*
>> *made in compromise negotiations is likewise not admissible.*
>> *This rule does not require exclusion when the evidence is*
>> *offered for another purpose, such as proving bias or*

7

*prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass alternative dispute resolution.*

Mediation sessions shall be closed to all persons other than the parties of record, their legal representatives, and other invited persons.

Mediators shall not be subject to process requiring the disclosure of any matter discussed during the mediation, but rather, such matter shall be considered confidential and privileged in nature. The confidentiality requirement may not be waived by the parties, and an objection to the obtaining of testimony or physical evidence from mediation may be made by any party or by the mediators.

We observe that Father did not seek to have the mediator's August 6, 2010 letter summarizing the mediation or any of its contents admitted into evidence. Rather, Father sought to have the Custody Evaluation Report admitted into evidence with any reference to the mediation redacted.

The record reveals that the thirty-page Custody Evaluation Report prepared by Dr. Lombard included detailed explanations of his evaluation procedures, analysis, and recommendations, which included among other information separate assessments for Father and Mother which reported in part their educational, employment, social, and relationship histories, their mental health, substance abuse, and medical histories, housing information, information regarding the children, psychological testing, parent-child observations, home study, and other information. The Custody Evaluation Report also included assessments of the children and a detailed summary and recommendations section. The sole reference to the parties' previous mediation attempt in the Custody Evaluation Report is on page twenty-six of the document, namely, in the fourth paragraph

8

under a heading titled "Collateral information forwarded by [Father's counsel],"[4] and provides:

> The attorney also forwarded documents regarding mediation that the parties went through.[5] It included a letter from the mediator indicating that mediation was unsuccessful. The letter indicated a statement regarding parenting time indicating the mediator's belief that they would follow the Indiana state guidelines but with the father having the first refusal thus resulting in fairly equal shared parenting time. However the subsequent Order of the Court indicated Indiana parenting time guidelines with no specific statements about right of first refusal.

December 8, 2010 Exhibits, Respondent's Exhibit A at 26-27.

At the December 8, 2010 hearing, the court heard testimony from Dr. Lombard that he did not rely at all upon information related to the mediation in rendering his findings and recommendations, that his clinical opinion is that the information pertaining to the mediation did not favor one party or the other, that he had been able to form an opinion as to his recommendations without considering any information pertaining to the mediation, that his recommendations did not differ from those in the Custody Evaluation Report, and that he was able and willing to revise his evaluation to exclude or redact any information provided by the parties referencing the mediation. Father's W-2 Wage and Tax Statement for 2010, admitted at the March 23, 2011 hearing, indicates that his wages, tips, and other compensation for 2010 was $37, 921.08. Dr. Lombard's thirty-one page evaluation included detailed separate assessments of Father, Mother, and their children,

---

[4] The section also describes a number of other documents forwarded by Father's counsel which included pleadings and information regarding recordings of Mother and Father.

[5] During his testimony at the December 8, 2010 hearing, Dr. Lombard testified that at the time he prepared the Custody Evaluation Report he believed that Father's counsel had provided the mediation documents to him but that he later discovered that Father's counsel had sent the documents to Father and that Father had brought the documents to an appointment.

9

which included psychological testing, parent-child observations, and home study, and Father testified at the March 23, 2011 hearing that he paid "$5,500 . . . plus Four . . . to Five Hundred Dollars" for the Custody Evaluation Report. March 23, 2011 Transcript at 86. Father further testified that that he paid an initial retainer fee of $4,000 toward the cost of a second custodial evaluation with another evaluator. The cost of obtaining these reports, and particularly a second custodial report, especially in light of Father's income, is significant. Moreover, we observe that Local Rule 76-DR-4-D of the Steuben Circuit and Superior Courts provides that "[u]nless waived by the Court no case involving the issue of contested child custody will be set for final hearing *until there is filed with the Court a custodial evaluation prepared by an expert approved by the Court*." (Emphasis added). Mother does not point to the record to show that any custodial report was admitted into evidence at the July 6 and 7, 2011 hearing or considered by the court in entering its custody order. Based upon the record, we conclude that it was an abuse of discretion to exclude from the evidence the Custody Evaluation Report with the reference to the unsuccessful mediation redacted, and Dr. Lombard's testimony. See Armstrong v. Gordon, 871 N.E.2d 287, 297 (Ind. Ct. App. 2007) (concluding that the trial court's exclusion of certain evidence was erroneous and inconsistent with substantial justice as it directly implicated the heart of the matter before the trier of fact), reh'g denied, trans. denied.

Further, we note that the Custody Evaluation Report included, as explained in part above, detailed and comprehensive information regarding assessments of Father, Mother, and their children. The Custody Evaluation Report also included Dr. Lombard's

10

summary and recommendations. In his recommendations, Dr. Lombard stated that based on the comprehensive evaluation, it was his clinical opinion that it was in the best interests of the children for Father to be their primary custodial parent, that Mother have parenting time according to the Indiana parenting time guidelines on the condition that she is compliant with certain recommended treatment recommendations, and that until she is compliant it is recommended that her parenting time be supervised. The Custody Evaluation Report reported Mother's history of aggression and violence toward Father, her psychological testing which indicated a high risk for impulsive decision making, paranoia, and emotional volatility, that audio recordings indicated that Mother exposed the children unnecessarily to conflicts between Mother and Father, and that Mother did not have insight or a clear understanding of the severity of her aggressive behaviors or the dangerousness of exposing the children to those incidents. The Custody Evaluation Report further summarized how Mother limited Father's access to the children. Dr. Lombard recommended that Mother complete appropriate parenting skills training, that she enter individual mental health counseling, and that she complete a violence abatement program, and he stated that it was his clinical opinion that until Mother is compliant with these recommendations she will continue to be a significant risk for emotional harm and neglect of her children and risk for further parental interference. The Custody Evaluation Report provided that current evaluation indicated that Father was not exhibiting clinically significant psychiatric symptoms, that he was experiencing high stress levels related to the child custody battle, and that it was recommended that he either attend stress management classes or individual mental health counseling to address

11

these issues. The Custody Evaluation Report also indicated that both children have been exposed to the highly volatile situations between Mother and Father and that both children would benefit from ongoing mental health counseling.

A custodial evaluation prepared by an expert approved by the court was required prior to a final hearing on the issue of contested child custody pursuant to Local Rule 76-DR-4-D of the Steuben Circuit and Superior Courts, and no such evaluation was admitted at the July hearing in this case. The cost to Father of obtaining a second custodial evaluation was not insignificant in light of his income. Although the trial court heard evidence at the July 6 and 7, 2011 hearing, including the testimony of Mother and Father, and made findings related to the character flaws of Mother and Father, we cannot say that the probable impact of the exclusion of the Custody Evaluation Report on the court's final custody, parenting time, and support orders set forth in its October 6, 2011 Final Orders, in light of the evidence presented and set forth in the Custody Evaluation Report, is sufficiently minor so as not to affect the substantial rights of the parties.

For the foregoing reasons, we reverse the trial court's order and remand for proceedings consistent with this opinion.

Reversed and remanded.

BAKER, J., and KIRSCH, J., concur.

12